UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>    v.<br><br>KENNETH BRICKHOUSE,<br>    *Defendant.* | No. 3:16-cr-114-2 (VAB) |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Kenneth Brickhouse ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. for Compassionate Release, ECF No. 462 (May 8, 2020) ("Def.'s Mot."); *see also* Mem. in Supp., ECF No. 463 (May 8, 2020) ("Def.'s Mem."). The Government opposes his motion. Mem. in Opp'n to Mot. for Compassionate Release, ECF No. 467 (May 12, 2020) ("Gov't Opp'n").

For the reasons set forth below, the Court **GRANTS** Mr. Brickhouse's motion for compassionate release. Mr. Brickhouse's term of imprisonment is reduced to **TIME SERVED;** he shall be released from Bureau of Prisons ("BOP") custody immediately, and his term of supervised release shall begin on home confinement. All other conditions of supervised release from his March 9, 2017 judgment shall remain in effect.

**I.    BACKGROUND**

On September 23, 2016, Mr. Brickhouse pled guilty to conspiracy with intent to distribute 500 grams or more of cocaine (Count One) and 100 grams or more of heroin (Count Two) under 21 U.S.C. §§ 846, 841(b)(1)(B)(i)–(ii), and carrying and possessing a firearm in

1

furtherance of and during and in relation to a drug trafficking offense (Count Seven) under 18 U.S.C. § 924(c)(1)(A)(i). Plea Agreement, ECF No. 118 (Sept. 23, 2016).[1]

On March 9, 2017, the Court sentenced Mr. Brickhouse to a total of 120 months imprisonment; 60 months on counts one and two to run concurrently, and 60 months on count seven to be served consecutively. Am. J., ECF No. 267 (Apr. 6, 2017). The Court also sentenced him to a supervised release term of five years and a special assessment of $300.00.

On May 8, 2020, Mr. Brickhouse moved for compassionate release due to his health issues and in light of the COVID-19 pandemic. Def.'s Mot. Mr. Brickhouse submitted ten exhibits in support of his motion. Def.'s Mot. Exs. A–J, ECF Nos. 463-1–463-9 (May 8, 2020).

On May 12, 2020, the Government filed its response. ECF No. 467 (May 12, 2020).

On May 14, 2020, Mr. Brickhouse filed a supplemental memorandum. Suppl. Mem., ECF No. 468 (May 14, 2020).

On May 14, 2020, the Court heard oral argument by telephonic conference, to which Mr. Brickhouse consented, according to his counsel. Minute Entry, ECF No. 469 (May 14, 2020).

## II.    STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step

---

[1] He also agreed to forfeit $659.00, weapons, and ammunition seized from him. Plea Agreement at 3.

Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently.

3

*See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Brickhouse requests that the Court grant his motion for compassionate release by reducing his sentence of incarceration. Def.'s Mem. at 1. He argues that the coronavirus pandemic coupled with his "dangerously high blood pressure," morbid obesity, and pre-diabetic status "is an extraordinary and compelling circumstance" warranting release. *Id.* He currently is incarcerated at FMC Devens and, when including good time credit, has served roughly half of his sentence. *Id.* at 2. He submitted a request for compassionate release to the FMC Devens Warden on April 13, 2020, which was denied on April 20, 2020. *Id.* Mr. Brickhouse maintains that he is at grave risk "from continued incarceration [and that] provides a compelling reason for his immediate release." *Id.* at 14. As of May 14, 2020, FMC Devens reported eight confirmed positive inmate cases of COVID-19 and two confirmed positive staff cases. Suppl. Mem. at 1. Mr. Brickhouse further argues that his conduct while incarcerated, both pre- and post-conviction, supports his release. *Id.* at 34–35. He asks that the Court reduce his sentence to time served. *Id.* at 36.

The Government opposes Mr. Brickhouse's motion. While the Government acknowledges Mr. Brickhouse's risk because of his underlying health conditions and the risk of COVID-19 to the general prison population, Gov't Opp'n at 8–9, it argues that Mr. Brickhouse is

not a first-time offender and his criminal record suggests he would pose a danger to the community, if released. *Id.* at 12–13.

While this is a close and difficult case, the Court ultimately agrees that the balance of the relevant factors favors Mr. Brickhouse's immediate release.

### 1. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, 09CR581, 2020 WL 2097653 (S.D.N.Y. May 1, 2020) (defendant serving a 180 month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions— Type 2 diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Delgado*, 3:18-cr-17-(VAB)-1, 2020 WL 2464685 (Apr. 30, 2020) (obesity and sleep apnea placed defendant at significant risk from COVID-19); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma . . . . [Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8,

5

2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Zukerman*, 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence.").

Mr. Brickhouse's severe obesity and stage 2 hypertension puts him at an increased risk of not surviving COVID-19, if he were to get the disease. He is 66 inches tall and weighs 284 pounds. *Id.* at 29 (citing Def.'s Ex. D at 4–5). According to some of his medical records, his body mass index (BMI) is 46.8 percent, above the level of 40 for consideration of "severe obesity" by the CDC. *Id.* Severe obesity "increases the risk of serious breathing problem called acute respiratory distress syndrome (ARDS), which is a major complication of COVID-19 and can cause difficulties with a doctor's ability to provide respiratory support seriously ill patients." *Id.* (quoting *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 14, 2020). In addition to his obesity and hypertension, Mr. Brickhouse "has been diagnosed as prediabetic, *id.* at 30, has suffered "three bouts of acute respiratory infections," *id.* at 3, and has been admitted for treatment twice for pneumonia. *Id.*

Together, his various medical conditions place him in a high risk category for COVID-19 complications, if he contracted the virus. *See, e.g.*, *See United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to an incarcerated person who "suffer[ed] from hypertension, sleep apnea, high blood pressure,

and high cholesterol"); *United States v. Gross,* No. 15-CR-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to an incarcerated person who was "severely overweight and suffers from high blood pressure and sleep apnea," finding that "the combination of [his] health conditions and his incarceration compounds the risk COVID-19 poses to him, placing him in particularly grave danger" (internal citation and quotation marks omitted)); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release to an incarcerated person based on his obesity alone: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19.").

Both Congress and the Attorney General have recognized the emergency presented to the Bureau of Prisons by COVID 19. In passing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress provided that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement. . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr subsequently made a "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *1 (E.D.N.Y. Apr. 10, 2020) (citing a memorandum for the Director of BOP). "In particular, the Attorney General acknowledged the 'significant levels of infection' at FCI Danbury and instructed the Bureau to 'move with dispatch . . . to move vulnerable inmates out of [this] institution[ ].'" *Id.*

As of May 14, 2020, FMC Devens had eight recorded cases of positive cases among inmates and two cases among staff, a rapid increase in the numbers of positive cases in a matter

of days. *See COVID-19, Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 14, 2020).

Accordingly, given Mr. Brickhouse's underlying health and the spread of COVID-19 at FMC Devens, there are extraordinary and compelling circumstances supporting his release.

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Brickhouse's counsel represents that Mr. Brickhouse requested and was denied compassionate release from the Warden at FMC Devens. Def.'s Mem. at 2 (citing Def.'s Ex. A—Letter to Warden). As the thirty-day period from the receipt of the letter occurred May 13, 2020, *see* Gov't Opp'n at 6–7, the exhaustion requirement has been met.[2]

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, Section 1B1.13 of the Guidelines "further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'" and after considering the factors listed in 18 U.S.C. 3553(a). *McCarthy*, 2020 WL 1698732 at *5.

While a sentence of time served would reduce Mr. Brickhouse's sentence by roughly half, including good-time credit, "a sentence of time served would still reflect the seriousness of

---

[2] The letter appears to have been submitted on April 10, 2020 and recorded as received by the Warden's secretary on April 13, 2020. *See* Def.'s Ex. A at 1.

8

the offense, promote[ ] respect for the law, and provide[ ] just punishment for the offense." *United States v. Jepsen*, No. 3:19-cv-00073 (VLB), 2020 WL 1640232, at *5 (Apr. 1, 2020). While at FMC Devens, Mr. Brickhouse has taken "advantage of the opportunity to obtain a forklift operator's license," and is enrolled or has completed nineteen "education courses, including training to become a home health aide, principles of construction, reading, and history." Def.'s Mem. at 33. Mr. Brickhouse has received only one disciplinary infraction while at FMC Devens and received no disciplinary issues while detained at Wyatt. *Id.* Thus far, Mr. Brickhouse has taken his term of incarceration seriously and has demonstrated a commitment to becoming a successful member of the community upon release.

Given his extensive criminal history, his actions over the last few years in a controlled and supervised environment are no guarantee that Mr. Brickhouse will no longer be a danger to any other person or the community. But these actions are sufficient to warrant his release here, given the Court's limited authority. A continued term of imprisonment, given the recent rapid spread of COVID-19 at FMC Devens and Mr. Brickhouse's serious underlying conditions, would not serve the ends of justice.

As one judge noted recently about another inmate at another facility: "The Court's preferred course of action would have been to grant her temporary release, removing her from FCI Danbury during the pandemic while requiring her to eventually serve the remainder of her sentence once the danger from COVID-19 had subsided." *United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020). Clearly, that option would be the preferable solution for Mr. Brickhouse, given his original sentence and his criminal history. "But the mechanism for granting temporary release—18 U.S.C. § 3622(a)—lies solely in the BOP's hands, leaving the Court without any authority to grant the relief it believes most proper in this

instance." *Id.* ("The Court fears that leaving Ms. Park any longer at FCI Danbury may convert a three-year prison sentence into a death sentence. And that the Court cannot allow.").

In the absence of such relief from BOP, reduction of Mr. Brickhouse's sentence to time served is consistent with U.S.S.G. § 1B1.13 because extraordinary and compelling reasons warrant the reduction.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

## IV.  CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Brickhouse's term of imprisonment is reduced to **TIME SERVED**. It is **ORDERED** that Mr. Brickhouse be released immediately to begin his five-year term of supervised release on home confinement. Within fourteen (14) days of release, Mr. Brickhouse also shall contact the U.S. Probation Office for evaluation and possible inclusion in one of the District Court of Connecticut's reentry or support court programs. All other conditions of supervised release from his March 9, 2017 judgment shall remain in effect.

Upon returning to his home, Mr. Brickhouse shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of May, 2020.

      /s/ Victor A. Bolden
      Victor A. Bolden
      United States District Judge